**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ROBERT HOOT,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNIVERSITY OF NEVADA, LAS VEGAS, *et al.*,<br><br>　　　　　Defendants. | Case No. 15–cv–00175–APG–PAL<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>(Dkt. Nos. 10, 17, 22) |

　　　　Plaintiff Robert Hoot administered surveys in the free-speech zone of the University of Nevada Las Vegas to collect data for a dissertation at Walden University. An administrator at Walden told him to stop because there was a problem with his site approval. Hoot left three messages with defendant Lori Olafson, the Executive Director of the Office of Research Integrity at UNLV, over the weekend. Because she did not return his messages, he visited her office on Monday morning to explain that she was violating his civil rights. Olafson stated that she was not stopping him from collecting data and left for a meeting. Hoot received another email from Walden that afternoon stating that Walden, not UNLV, advised him to suspend his research.

　　　　Hoot eventually completed his research at UNLV, obtained a doctorate from Walden, and then sued the State of Nevada, UNLV, and Olafson for violating his First Amendment rights to free speech, free assembly, and petition the government. UNLV and Olafson move to dismiss and/or for summary judgment, arguing that (1) Hoot's claims are barred by the Eleventh Amendment, (2) Olafson is entitled to qualified immunity, and (3) Hoot fails to state a claim upon which relief can be granted because Walden, rather than UNLV or Olafson, told Hoot to suspend his research. I agree that State and UNLV are immune from suit and that Hoot cannot maintain his claims against Olafson. I therefore, grant the motion to dismiss.

/ / / /

## I. BACKGROUND

Hoot was enrolled at Walden University and researching the moral perception of acts that affect nature and government policies related to clean energy. (*See* Dkt. #5 at ¶ 8.) Hoot was not affiliated with UNLV and did not receive funding from it. (*Id*. at ¶¶ 4–5.) He obtained permission from an employee at UNLV to conduct a series of surveys in the campus' free-speech zone in connection with his research. (*Id*. at ¶ 1.)

On Friday February 8, 2013, Leilani Endicott, chair of Walden University's Institutional Review Board ("IRB") sent Hoot an email saying that he had to suspend his data collection because there was a problem with the paperwork for his site approval at UNLV. (*Id*. at ¶ 10.) Walden wanted Hoot to execute a memorandum of understanding with UNLV before collecting additional data for his dissertation. (*See id.* at ¶ 10.) Hoot allegedly later learned that one of UNLV's female employee initially contacted Walden about this issue. (*Id*. at ¶ 11.)

On Saturday, Hoot left two voicemails for Olafson, telling her that he would like to discuss his civil rights with her. (*Id*. at ¶ 14.) On Sunday, he sent a follow-up email: "Would you please call me about my free speech activities in the free speech zone at UNLV[?]" (*Id*. at ¶ 15.) On Monday morning, Hoot emailed Endicott:

> Beyond that, it seems from your last message that you believe that the IRB at UNLV has some type of authority to obstruct the free speech of a person who is not affiliated with UNLV and conducting research in a designated free speech zone. That is not the case, but [I] will try to simplify your task by asking UNLV to send a letter retracting any request to stop my research.

(*Id*. at ¶ 16.)

Because no one immediately responded to these messages, Hoot went to Olafson's office on Monday morning to speak with her in person. (*Id*. at ¶ 19.) He met an employee in Olafson's office and told her that UNLV's policies do not apply to him because he is not affiliated with the university. (*Id*. at ¶ 21.) Olafson was called to confirm; she told Hoot that she was aware of his situation and was headed to a meeting about it. (*Id*. at ¶¶ 22–23.) Hoot told her that she did not understand why he was there and explained to her "the three categories of fora that had been identified by the U.S. Supreme Court, in Perry v. Perry, 460 U.S. 37 (1983), for the purposes of

First Amendment speech." (*Id*. at ¶ 24.)  Olafson clarified that it was not her that was "saying that [Hoot] could not conduct research, it was his school that told [him] to stop conducting research." (*Id*. at ¶ 25.)  Hoot asked if she would send an email to Walden stating that, but she declined. (*Id*. at ¶ 26.)  Hoot also asked if he could attend the meeting or speak to someone else about his situation. (*Id*. at ¶¶ 28, 30.)  She said that there was no one else to talk to and that he could not attend the meeting. (*Id*.)

On Tuesday, Olafson reiterated these facts in an email to Hoot: "Bob, As noted by your IRB Chair, should you wish to proceed with recruiting subjects on the UNLV campus, an MOU between Walden University and UNLV will be required to provide site authorization." (*Id*. at ¶ 32.)  Hoot responded that UNLV's polices do not apply to him because he does not receive support from UNLV. (*Id*. at ¶ 33.)  Hoot received another email from Endicott; it quoted UNLV's policy regarding memoranda of understanding and reiterated that Hoot cannot collect data for his dissertation without complying with the policy. (*Id*. at ¶ 34.)

On Wednesday, Endicott emailed Hoot and his dissertation committee, writing that she had discussed Hoot's situation with Walden's dean and that Olafson had "perceived [Hoot's behavior] to be disruptive and disrespectful." (*Id*. at ¶ 35.)  Walden allegedly subjected Hoot to a hearing, which addressed whether he would be able to use the data collected at UNLV in his dissertation. (*Id*. at ¶ 42.)  Walden also considered whether Hoot should be expelled. (*Id*.)  He eventually completed his research, successfully defended his dissertation, and graduated from Walden University with a Ph.D. (*See id*.)

After graduating, Hoot commenced this action against the State of Nevada, UNLV, and Olafson, alleging that they violated his right to free speech by preventing him from collecting data. (*Id*. at 11–13.)  He also alleges that they violated his right to petition the government in retaliation for his free-speech activities by preventing him from appearing at the meeting with Olafson. (*Id*.)  Hoot seeks money damages, punitive damages, and an injunction preventing UNLV from enforcing its policies in the future.

## II.     ANALYSIS[1]

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to rise above the speculative level." *Twombly* 550 U.S. at 555.  To survive a motion to dismiss, a complaint must "contain [ ] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

District courts must apply a two-step approach when considering motions to dismiss. *Id*. at 679.  First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id*.; *Brown v. Elec. Arts, Inc*. 724 F.3d 1235, 1247–48 (9th Cir. 2013).  Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679.  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 663.  Where the complaint does not permit the court to infer more than the

---

[1] I decline the defendants' invitation to convert their motion to dismiss into a motion for summary judgment. (*See* Dkt. #10 at 6.)  In support of their motion, the defendants presented matters outside the pleadings.  For example, they proffered an email from Endicott stating,

> To be clear, UNLV has not stated any limitations on what you may do in the free speech area of the campus.  It is Walden that is advising you that data collection on the UNLV campus should be suspended. [. . .] Even if one makes the argument that a person is entitled to talk to others about a study as an exercise of free speech in a public area, that does not automatically mean that data collected in this matter is eligible for inclusion in a dissertation.

(Dkt. #10-8 at 1.)  However, these exhibits were not authenticated.  I therefore cannot consider them. Fed. R. Civ. P. 12(d); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks and citation omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### A. All claims against the state of Nevada and UNLV are dismissed with prejudice

Hoot alleges that the state of Nevada and UNLV violated his First Amendment rights by requiring him to obtain a memorandum of understanding before administering surveys on campus. He argues that this alleged conduct is actionable under the Supreme Court's decision in *Monell v. Dept. of Social Serv's of the City of New York*, 436 U.S. 658 (1978). He seeks monetary damages and injunctive relief. Defendants argue that they are entitled to Eleventh Amendment immunity.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment immunity extends to actions against a state by one of its citizens for monetary damages. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Although the Eleventh Amendment does not prevent a plaintiff from suing a state for injunctive relief, *Seminole Tribe*, 517 U.S. at 54 (citing *Ex parte Young*, 209 U.S. 123 (1908)), a plaintiff seeking injunctive relief must demonstrate a likelihood of suffering the same injury in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

Hoot's allegations do not survive the Eleventh Amendment's bar. UNLV is an arm of the state of Nevada and is entitled to Eleventh Amendment immunity. *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010). Hoot's *Monell* argument does not cure this problem because *Monell* liability does not extend to a state

1  instrumentality like UNLV. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *see
2  also Krainski*, 616 F.3d at 968 (rejecting a plaintiff's *Monell* claim against UNLV under *Will*). I
3  therefore dismiss with prejudice all claims against the state of Nevada and UNLV for monetary
4  damages.

5  Hoot's claim for injunctive relief also fails. To have standing to seek injunctive relief,
6  "plaintiffs must demonstrate a 'credible threat' exists that they will again be subject to the
7  specific injury for which they seek injunctive or declaratory relief." *Sample v. Johnson*, 771 F.2d
8  1335, 1340 (9th Cir. 1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 355 n. 3 (1983)).
9  Because Hoot completed his research, obtained his doctorate, and graduated from Walden, there
10 is no "credible threat" that UNLV will subject him to the same requirements in the future. I
11 therefore dismiss Hoot's claim for injunctive relief with prejudice.

### B.     Hoot's Claims against Olafson

Hoot next alleges that Olafson violated his right to free speech by preventing him from collecting data and withholding site approval for two months. He also alleges that she retaliated against him by (1) preventing him from appearing at the meeting with Olafson, and thereby violating his right to petition the government, and (2) complaining to Walden about his free-speech activities. In response, Olafson argues that Walden, not her, told Hoot to suspend his research and that she is entitled to qualified immunity.

#### 1.     Hoot's free-speech claims are dismissed with prejudice.

A defendant violates a plaintiff's First Amendment right to free speech if the defendant's "acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (citation omitted). Here, Hoot contends that his First Amendment activities were unlawfully chilled because he was forced to choose between (1) exercising his free-speech rights by continuing with his research at the risk of jeopardizing his Ph.D. or (2) suspending his research and complying with UNLV's policy.

Although the possibility of jeopardizing one's doctorate may "chill or silence a person of ordinary firmness from future First Amendment activities," Hoot pleads himself out of court with regard to his free-speech claims against Olafson by alleging that Walden chilled his speech. (Dkt. #5 at ¶ 10.) Indeed, Hoot alleges that Olafson expressly told him that "she was not saying that [he] could not conduct research." (*Id*. at ¶¶ 10, 25.) Hoot confirms that Olafson reiterated these facts in a subsequent email: "[a]s noted by your IRB Chair [at Walden University], should you wish to proceed with recruiting subjects on the UNLV campus, an MOU between Walden University and UNLV will be required to provide site authorization." (*Id*. at ¶ 32.) Because Hoot alleges that Walden, not Olafson, temporarily barred his research, I dismiss Hoot's free-speech claims against Olafson with prejudice.

2.  Hoot's retaliation claim regarding the meeting is dismissed with prejudice.

Hoot next alleges that Olafson violated his right to petition the government in retaliation for his free-speech activities by preventing him from appearing at the meeting with her. Olafson argues that this claim must be dismissed because she is entitled to qualified immunity. I agree.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the [official's] conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *al–Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir.2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Because Hoot did not have a clearly establish right to attend the meeting with Olafson—or even argue that he had a right to attend the meeting—I dismiss his retaliation claim regarding the meeting with prejudice.

3.  Hoot's retaliation claim regarding Olafson's complaint to Walden is dismissed with leave to amend.

Finally, Hoot alleges that Olafson retaliated against him for exercising his right to free speech by complaining to Walden. In response, Olafson contends that she is entitled to qualified immunity.

In order to state a claim for First Amendment retaliation, a plaintiff must show that the defendant deterred or chilled plaintiff's speech and that such deterrence was "a substantial or

motivating factor" in the defendant's conduct. *Lacey*, 693 F.3d at 916 (citation omitted).  In support of this claim, Hoot alleges that "the initial contact to his school was by a female employee from UNLV who called his school by telephone." (Dkt. #5 at ¶ 11.)  Additionally, he alleges that an administrator at Walden told him that Olafson complained that Hoot's behavior in her office was "disruptive and disrespectful." (*Id*. at ¶ 35.)  These allegations do not state a plausible claim for First Amendment retaliation.  They merely present the possibility that Olafson may have retaliated against Hoot for exercising his right to free speech; they do not, as *Iqbal* requires, show that Hoot's First Amendment activities were a substantial or motivating factor in Olafson's decision to complain to Walden.

Because I find that Hoot failed to state a plausible claim for First Amendment retaliation, I do not reach Olafson's qualified-immunity argument. *See Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("[A] a Rule 12(b)(6) dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies.") (citation omitted). I therefore dismiss Hoot's retaliation claim regarding Olafson's complaint to Walden with leave to amend.

### C. Motion to Strike

I grant the defendants' motion to strike because Hoot filed a sur-reply without obtaining permission from the defendants and without leave of court.  Even if I were to construe Hoot's sur-reply as a motion for leave to file a sur-reply, I would deny it as duplicative because it reiterates arguments that Hoot asserted in prior filings. *See Ready Tramp., Inc. v. AAR Mfg., Inc*., 627 F.3d 402, 404 (9th Cir. 2010).

### V. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **(Dkt. #10) is GRANTED in part and DENIED in part**. All claims against the State of Nevada and UNLV are dismissed with prejudice.  All claims for injunctive relief are dismissed with prejudice. Additionally, all claims against Olafson are dismissed with prejudice with one exception: Hoot is granted leave to amend his complaint if he can state a plausible claim against Olafson for First

Amendment retaliation in connection with her alleged complaint to Walden.  Hoot's amended complaint must be filed within 21 days from the entry of this order.  Failure to file an amended complaint will result in the administrative closing of this action.

  IT IS FURTHER ORDERED that the defendants' motion to strike Hoot's sur-reply **(Dkt. #17) is GRANTED**.  Hoot's sur-reply **(Dkt. #16) is STRICKEN**.

  IT IS FURTHER ORDERED that Hoot's motion to continue district judge hearing **(Dkt. #22) is DENIED** as moot.  *See* LR 78-2.

  DATED this 25th day of January, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE